UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LARHONDA DAVIS ON BEHALF OF
T.D., A MINOR,**

        **Plaintiff,**

v.                                           **Case No: 6:11-cv-1142-Orl-GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OF DECISION

LaRhonda Davis (hereafter "Ms. Davis") on behalf of T.D. (hereafter "Claimant"), a minor, appeals to the District Court from a final decision of the Commissioner of Social Security (hereafter "Commissioner") denying Claimant's application for supplemental security benefits (hereafter "Application") under Title XVI.  Doc. No. 1.  The dispositive issue Claimant raises on appeal is the Administrative Law Judge's (hereafter "ALJ") failure to articulate good cause for giving Sandra Gonzalez's, M.D., opinion less than controlling weight.  Doc. No. 13 at 16-18, 23-24.[1]  For the reasons set forth below, the Commissioner's decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

**I.**   **MEDICAL OPINIONS**

    **A.  Sandra Gonzalez, M.D. – Claimant's Treating Psychiatrist**

Dr. Gonzalez treated Claimant from July 23, 2008, to August 24, 2009.  R. 526.  On July 23, 2008, Dr. Gonzalez conducted her initial psychiatric evaluation of Claimant.  R. 484-93.

---

[1] As a result, the Court will not address the argument that the ALJ's finding that Claimant has less than marked limitations in the domains of acquiring and using information, and attending and completing tasks is not supported by substantial evidence.  Doc. No. 13 at 18-22.

After compiling a detailed family and medical history, Dr. Gonzalez provided her observations during her mental status examination. R. 491. Dr. Gonzalez indicated that Claimant had some difficulties keeping track of the questions she asked, needed some redirection and refocus to obtain the relevant answers and appeared to have some difficulty "processing requests and information being asked." R. 491. Dr. Gonzalez indicated that Claimant's affect was broad and appropriate, his cognitive functions were essentially intact, his judgment was adequate and Claimant exhibited fair insight. R. 491. Dr. Gonzalez estimated that Claimant's intelligence was average. R. 491. Dr. Gonzalez diagnosed Claimant with Attention Deficit Hyperactivity Disorder (hereafter "ADHD") and provisionally diagnosed Oppositional Defiant Disorder. R. 492.

On September 22, 2008, Dr. Gonzalez indicated that Claimant was "[a]pparently" doing well and diagnosed Claimant with ADHD, provisionally diagnosed Oppositional Defiant Disorder and rule out learning disorder, not otherwise specified. R. 487. On November 21, 2008, Dr. Gonzalez indicated that Claimant was calm and cooperative, but non-spontaneous, and "participated in a task organized manner." R. 485. Dr. Gonzalez indicated that Claimant did not appear psychotic, but the "look on his face was as if he was lost in space. There was some psychomotor slowness." R. 485. Dr. Gonzalez discussed with Claimant's mother the possibility that Claimant suffers from a learning disorder that would not typically respond to medication, and having Claimant tested by a psychologist, neurologist, along with a visual and auditory screen. R. 485. Dr. Gonzalez indicated that Claimant's "inattention and distractibility are not improving on medication." R. 486. Dr. Gonzalez diagnosed Claimant with ADHD, provisionally diagnosed Oppositional Defiant Disorder and rule out learning disorder, not otherwise specified. R. 486. Dr. Gonzalez also discontinued Vyvanse and gave Claimant a trial

of Focalin XR.  R. 486.

On December 17, 2008, Dr. Gonzalez saw Claimant to assess his response to the medication.  R. 484.  Dr. Gonzalez indicated that Claimant "continues to do poorly" and again recommended the Claimant be psychologically and neurologically tested.  R. 484.  Dr. Gonzalez diagnosed Claimant with ADHD, provisionally diagnosed Oppositional Defiant Disorder and rule out learning disorder, not otherwise specified.  R. 484.

On February 4, 2009, Claimant saw Dr. Gonzalez and reported no improvement.  R. 524.  Dr. Gonzalez indicated that Claimant's "attention span was short and he was fidgety."  R. 524.  Dr. Gonzalez indicated that Claimant "continued to be symptomatic despite maximum dosages of Focalin."  R. 524.  Dr. Gonzalez diagnosed Claimant with ADHD, provisionally diagnosed Oppositional Defiant Disorder and rule out learning disorder, not otherwise specified.  R. 524.  Dr. Gonzalez discontinued Focalin and started Claimant on a trial of Adderall.  R. 524.

On March 13, 2009, Dr. Gonzalez noted that Claimant's attention span for the session was appropriate, but he was a little fidgety.  R. 522.  Dr. Gonzalez indicated that Claimant continues to struggle academically, although he gets some behavioral benefits from his medication.  R. 522.  Dr. Gonzalez indicated that Claimant's academic struggles "may be due more from impairment of his executive functions or learning disability."  R. 522.  Dr. Gonzalez diagnosed Claimant with ADHD and learning disorder, not otherwise specified.  R. 522.  Dr. Gonzalez continued Claimant on Adderall and started Claimant on a trial of amphetamine salts in the afternoon.  R. 522.

On April 8, 2009, Dr. Gonzalez indicated that Claimant was doing better clinically, as reported by his father.  R. 521.  Dr. Gonzalez diagnosed Claimant with ADHD, provisionally diagnosed Oppositional Defiant Disorder and learning disorder, not otherwise specified.  R. 521.

On June 8, 2009, Dr. Gonzalez indicated that Claimant "continues to struggle both academically and in the skills of working habits. This may be due to both severity of a learning disability and ADHD." R. 519. Dr. Gonzalez diagnosed Claimant with ADHD, Oppositional Defiant Disorder and learning disorder not otherwise specified, noting said learning disorder was probably severe. R. 519. On July 6, 2009, Dr. Gonzalez indicated that Claimant was doing better, as reported by his father. R. 518. Dr. Gonzalez again diagnosed Claimant with ADHD, Oppositional Defiant Disorder and learning disorder not otherwise specified. R. 518.

On September 4, 2009, Dr. Gonzalez completed a "Domain of Functioning Questionnaire." R. 526-29. Dr. Gonzalez opined that Claimant suffers marked limitations in acquiring and using information, and attending and completing tasks. R. 526-27. Dr. Gonzalez opined that Claimant suffers less than marked limitations in interacting and relating with others, moving about and manipulating objections, caring for yourself, and health and physical well-being. R. 527-28.

### B. Jeffrey M. Williamson, Ph.D. – Consultative Examiner

On September 19, 2007, Dr. Williamson conducted a psychological evaluation of Claimant on behalf of the Commissioner. R. 365-68. Dr. Williamson conducted a "clinical interview with [Claimant] and his mother, [and] intellectual and academic achievement testing" to determine Claimant's "current cognitive functioning." R. 365. Dr. Williamson observed Claimant to be alert, oriented and cooperative. R. 366. Dr. Williamson observed Claimant's persistence and concentration to be fair, but his psychomotor activity to be slightly elevated. R. 366. Dr. Williamson observed Claimant's auditory comprehension to be intact and his spontaneous speech to be fluid, coherent and organized. R. 366. Dr. Williamson observed Claimant's mood to be responsive and his affect to be setting appropriate. R. 366.

Dr. Williamson conducted intelligence testing that measures verbal comprehension, perceptual reasoning, working memory and processing speed. R. 366. Dr. Williamson noted that Plaintiff's overall scores in these areas "suggest . . . cognitive abilities that fall in the borderline to low average cognitive functioning range." R. 366. Dr. Williamson indicated that Claimant's work memory score "evidences the difficulty with attention and concentration that are contributing to his learning difficulties." R. 367. Dr. Williamson indicated that Claimant's processing speed score indicated that Claimant's "attention and concentration are significantly hindering his ability to perform timed academic tasks." R. 367.

Dr. Williamson conducted academic achievement testing. R. 367. Dr. Williamson indicated that Claimant's "reading scores indicated reading abilities that lie approximately in the kindergarten grade level." R. 367. Dr. Williamson indicated that Claimant's "mathematical reasoning skills lies approximately in the beginning first grade level." R. 367. Dr. Williamson indicated that Claimant's "overall level of achievement is low average. His ability to apply academic skills is low average. [His] fluency with academic skills is very low." R. 367.

Dr. Williamson's diagnostic impression was that Claimant suffers from ADHD, borderline intellectual functioning and asthma. R. 368. Dr. Williamson provided the following conclusions from his examination:

> The results of the evaluation reveal a young male who is presently evidencing significant learning difficulties as reported by his mother and classroom teacher. Intellectual testing indicates borderline to low average cognitive functioning. His academic achievement scores were not commensurate with his intellectual ability. In fact, they were slightly higher which means that he should continue to receive continued academic support. [Claimant] appears to evidence weakness in the area of working memory and processing speed which appears symptomatic of his ADHD diagnosis. It appears that he would benefit from extended time on tests and assignments. Reports from teacher and clinical interview with [Claimant's] mother indicate he is evidencing

>learning difficulties, difficulty with attention and concentration, processing speed, and reading skills. He is presently in the first grade and will require consistent academic support and assistance in order to become a successful student.

R. 368. Thus, Dr. Williamson concluded that Claimant has significant learning difficulties, difficulty with attention, concentration, processing speed and reading skills. R. 368. Dr. Williamson concluded that Claimant will need consistent academic support and assistance to become a successful student. R. 368.

### C. Non-Examining State Consultants

On November 8, 2007 and February 13, 2008, Ira Pinnelas, M.D., and William Prather, M.D., completed childhood disability evaluation forms. R. 373-79, 416-21.[2] Drs. Pinellas and Prather both diagnosed Claimant with asthma, ADHD, "S/L Mild Language delay" and "BIF." R. 373, 416. Dr. Pinnelas opined that Claimant has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself and health and physical well-being. R. 375-76. Dr. Prather's opinion is almost identical to Dr. Pinnelas' opinion except that Dr. Prather opined that Claimant has no limitation in the ability to care for himself. R. 418-19.

## II.   ADMINISTRATIVE PROCEEDINGS

On June 28, 2007, Claimant's Application was filed. R. 103-09. The Application was denied initially and on reconsideration. R. 56, 58. Claimant requested a hearing before an ALJ and the hearing was conducted on September 24, 2009. R. 33, 71-73. Ms. Davis testified at the hearing. R. 36. Ms. Davis testified that Claimant is eight years old and is in second grade at Saint Mary's Catholic School. R. 36-37. Ms. Davis testified that Claimant receives occupational therapy once a week because he has trouble writing, fastening buttons and holding his pencil

---

[2] Theodore Weber, Psy.D., and Leslie Devitt, Ph.D., also signed the childhood disability evaluation forms as additional consulting doctors. R. 374, 417.

properly. R. 37, 39. Ms. Davis testified that the public school is working with Saint Mary's Catholic School to provide Claimant with help in math, reading and writing. R. 40. Ms. Davis also testified that Claimant received speech therapy in the past because he had a tongue thrust. R. 39.

Ms. Davis testified that Claimant has been diagnosed with ADHD. R. 40. Ms. Davis testified that, as a result of his ADHD, Claimant has trouble staying focused, has trouble concentrating on his school work, fidgets a lot and has to constantly be redirected with his school work. R. 40. Ms. Davis testified that Claimant's teacher assists him during spelling tests by helping him sound out the words so he can write the words down. R. 41. Ms. Davis testified that Claimant was late in learning how to tie his shoes and was not able to form complete sentences until he was four and a half years old. R. 42-43.

Ms. Davis testified that, in the mornings, she has to constantly redirect Claimant to get dressed, brush his teeth and wash his face. R. 42. Ms. Davis testified that she has to make sure Claimant's shirt is tucked in, his pants are zipped, his socks are pulled up and tighten his shoe laces. R. 42. Ms. Davis also testified that Claimant has difficulty getting his belt tight so his shirt stays tucked in. R. 43.

Ms. Davis testified that Claimant takes medication in the afternoon and that she helps him complete his homework, which can take up to three hours to complete. R. 43. Ms. Davis testified that Claimant has participated in football and soccer, but that in each sport he had to be redirected by the coach and had trouble following instructions. R. 44-45. Ms. Davis testified that Claimant attends Sunday school, but constantly fidgets and sometimes converses or interacts with other children when it is time to be quiet. R. 45.

Ms. Davis testified that Claimant takes Adderall in the morning and amphetamine salts in

the afternoon. R. 45. Ms. Davis testified that Claimant has taken other medications in the past that were temporarily effective and caused side effects. R. 46. Ms. Davis testified that recent testing done by the school system indicated that Claimant has a below average I.Q., as well as below average results in reading and math. R. 46. Ms. Davis testified that she is seeking supplemental security benefits so she can obtain a tutor for Claimant. R. 47.

On October 20, 2009, the ALJ issued his decision denying the Application. R. 13-30. The ALJ found that Claimant was a preschooler at the time the Application was filed and is currently a school age child. R. 16. The ALJ found that Claimant has not engaged in substantial gainful activity. R. 16. The ALJ found that Claimant suffers from the severe impairments of ADHD, learning disorder, fine motor development delay, Oppositional Defiant Disorder and asthma, as well as speech and language delay. R. 16. The ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, subpart P, Appendix 1. R. 16. The ALJ found that Claimant does not have an impairment or combination of impairments that functionally equals the listings. R. 16. Finally, the ALJ found that Claimant is not disabled. R. 29.

In weighing the medical opinion evidence, the ALJ stated:

> As for the opinion evidence, the undersigned has considered the statement of Dr. Sandra Gonzalez, the claimant's treating psychiatrist since July 2008, who indicated that the claimant has marked limitations acquiring and using information and attending and completing tasks based on diagnoses of ADHD, combined type, by history and oppositional defiant disorder. While the claimant has noted academic difficulties associated with his learning disability and with his problems with distraction and focus, Dr. Gonzalez's statements are based on the parental information, which appears to exceed the scope of the other evidence as a whole. Dr. Gonzalez's mental status examinations revealed that the claimant was sometimes inattentive and fidgety but that he was able to engage in each session, and the diagnosis of oppositional defiant disorder was only provisional and was not

> definitively diagnosed or treated. Thus, the undersigned does not accord substantial weight to Dr. Gonzalez's opinion in that it is not fully supported by her progress notes or the objective evidence as a whole. On the other hand, the state agency medical and psychological consultants' findings of less than marked limitations in most or all areas of function (Ex. 6F, 10F) comport with the evidence as a whole and are accorded substantial weight.

R. 21-22. Thus, the ALJ did not give controlling weight to Dr. Gonzalez's opinion because it was based on parental information, Claimant was able to engage in each session and Dr. Gonzalez only provisionally diagnosed Claimant with oppositional defiant disorder. The ALJ gave substantial weight to the state agency consultants' findings and opinions.

### III. LEGAL STANDARDS

#### A. THE ALJ'S DISABILITY ANALYSIS

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

A child under the age of 18 is considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 C.F.R. §§

404.1572(b), 416.972(b). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 C.F.R. §§ 404.1574, 404.1575, 416.974, 416.975. If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step-two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(c).

At steps three and four, the ALJ must determine whether the claimant's impairment or combination of impairments meets or functionally equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

In determining whether an impairment or combination of impairments functionally equals the listings, the ALJ must assess the claimant's functioning in terms of six domains: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for oneself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A child's impairments functionally equal a listed impairment, and thus constitute a disability, if the child's limitations are "marked" in two of the

six domains, or if the child's limitations are "extreme" in one of the six domains. 20 C.F.R. § 416.926a(d).

In assessing whether the claimant has "marked" or "extreme" limitations, the ALJ must consider the functional limitations from medically determinable impairments, including any impairments that are not severe. 20 C.F.R. § 416.926a(a). The ALJ must consider the interactive and cumulative effects of the claimant's impairment or multiple impairments in any affected domain. 20 C.F.R. § 416.926a(c).

20 C.F.R. § 416.926a(2) explains that a child has "marked limitation" in a domain when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain or complete activities. A child's day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. The regulations also explain that a "marked" limitation also means: a limitation that is "more than moderate" but "less than extreme"; or the equivalent of functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. 20 C.F.R. § 416.926a(e)(2).

20 C.F.R. § 416.926a(e)(3) explains that a child has an "extreme" limitation in a domain when his impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities. A child's day-to-day functioning may be very seriously limited when his impairment(s) limits only one activity or when the interactive and cumulative effects of his impairment(s) limit several activities. The regulations also explain that an "extreme" limitation also means:

1. A limitation that is "more than marked."

2. The equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean.

3. A valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to ensure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score.

4. For the domain of health and physical well-being, episodes of illness or exacerbations that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation.

20 C.F.R. § 416.926a(e)(3). Thus, for a disability finding, a child's impairments functionally equal a listing if the child's limitations are "marked" in two of the six domains, or if the child's limitations are "extreme" in one of the six domains. *Id*.

### B. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

*Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

    **C.    REMEDIES**

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice. *See Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[3]

## IV. ANALYSIS

Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

---

[3] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

*Johnson v. Barnhart*, 138 F. App'x. 266, 269 (11th Cir. 2005).[4] Conclusory statements by an ALJ to the effect that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion. *See Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *11 (M.D. Fla. Jan. 4, 2008) (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand); *see also Paltan v. Comm'r of Soc. Sec.*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342 at *5 (M.D. Fla. April 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").

In the case at bar, the ALJ gave two reasons for discounting Dr. Gonzalez's opinion. The ALJ's first stated reason was that Dr. Gonzalez's "statements are based on the parental information, which appears to exceed the scope of the other evidence as whole." R. 21. Dr. Gonzalez's reliance on Claimant's parents' statements in formulating her opinion is akin to a treating doctor relying on a patient's self-reported symptoms in formulating a medical opinion. The fact "that a patient 'self-reports' symptoms is not, standing alone, a reason to discount a treating physician." *Anderson-Wilson v. Astrue*, No. 1:11cv57–WCS, 2012 WL 161763 at *13 (N.D. Fla. Jan. 18, 2012).

Assuming arguendo that Dr. Gonzalez improperly relied on Claimant's parents' statements, the ALJ did not state how these statements exceeded the scope of the other medical evidence of record. In *Monte v. Astrue*, Case No. 5:08-cv-101-Oc-GRJ, 2009 WL 210720 at *6 (M.D. Fla. Jan. 28, 2009), the Court held:

> When assessing the Plaintiff's impairments, the ALJ was required to make "specific and well-articulated findings . . ." [b]ecause an ALJ is not

---

[4] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.

> permitted to substitute his judgment for that of the medical experts, the ALJ cannot reject portions of a medical opinion without providing an explanation for such a decision. Where an ALJ fails to sufficiently explain how he reached his decision, the Court may not speculate.

*Id*. (quoting *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987)). Therefore, reversal is required where an ALJ fails to sufficiently articulate the reasons supporting his decision to reject portions of a medical opinion while accepting others. The ALJ did not point to any specific facts to support his statement that Claimant's parents' statements exceeded the scope of the evidence as a whole. Conclusory statements that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion. *See Poplardo*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593 at *11 (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand); *Paltan*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342 at *5 ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").

The ALJ's second stated reason was that Dr. Gonzalez's opinion was not fully supported by her progress notes or the medical record because Claimant, although sometimes inattentive and fidgety, "was able to engage in each session, and the diagnosis of oppositional defiant disorder was only provisional and was not definitively diagnosed or treated." R. 21. This statement notwithstanding, the ALJ also stated that "[C]laimant has noted academic difficulties associated with his learning disability and with his problems with distraction and focus . . . ." R. 21. Thus, the ALJ acknowledged that Claimant has "noted academic difficulties" that are associated with problems concerning distraction and focus. R. 21. This statement is consistent with Dr. Gonzalez's repeated findings that Claimant struggles academically despite his medication. *See* R. 486, 519, 522. The ALJ's decision to give Dr. Gonzalez's opinion less than

controlling weight because Claimant could engage in each session is inconsistent with the ALJ's own finding that Claimant has problems with distraction and focus that result in academic difficulties. Consequently, this reason is not supported by substantial evidence.

The ALJ's statement that Dr. Gonzalez did not definitely diagnose Claimant with Oppositional Defiant Disorder is incorrect because, on June 8, 2009, Dr. Gonzalez removed the provisional status and diagnosed Claimant with Oppositional Defiant Disorder. R. 519. The ALJ's statement in this regard is particularly puzzling in light of the fact that the ALJ found that one of Claimant's severe impairments is "oppositional defiant disorder." R. 16. Further, there is no record medical evidence that Dr. Gonzalez did not treat Claimant's Oppositional Defiant Disorder. Thus, the ALJ's finding that Dr. Gonzalez only provisionally diagnosed Claimant with Oppositional Defiant Disorder and did not treat Claimant for this disorder is not supported by substantial evidence.

Finally, the Court notes that the ALJ did not state the weight he gave to Dr. Williamson's psychological evaluation. Dr. Williamson found that Claimant's scores with regard to working memory and processing speed indicated that Claimant's difficulty with attention and concentration are contributing to his academic difficulties and hindering his ability to perform timed tasks. R. 367. Dr. Williamson found that Claimant evidences "significant learning difficulties" and difficulties with attention, concentration, processing speed and reading skills. R. 367. When a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011)

(citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981) (emphasis added)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

Dr. Williamson's psychological report is an opinion under *Winschel* and the ALJ was required to state the weight he gave to it and the reasons therefor. The ALJ failed to do this. This error, along with the ALJ's failure to provide good cause for giving Dr. Gonzalez's opinion less than substantial weight, mandates reversal. *See Winschel*, 631 F.3d at 1178-79.

**V.    CONCLUSION**

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and

**2.** The Clerk is directed to enter judgment in favor of Claimant and close the case.

**DONE and ORDERED** in Orlando, Florida on August 20, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Bradley K. Boyd
Suite D
1310 W Eau Gallie Blvd
Melbourne, FL 32935
John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
John C. Stoner, Branch Chief
Shirley Lee Sohrn, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Ruben Rivera, Jr.
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224